IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MATTHEW ALEXANDER KING, ) <br> #17576-104, ) <br> ) <br>     **Plaintiff,** ) <br>  vs. ) <br> ) <br> KATHY HILL, ) <br> DAN SPROUL, ) <br> GUY PAGLI, ) <br> MIRANDA FAUST, ) <br> BARBARA VON BLANCKENSEE, ) <br> MARY NOLAND, ) <br> AMBER NELSON, ) <br> KATHERINE SIEREVELD, ) <br> TRACY KNUTSON, ) <br> MICHAEL CARVAJAL, ) <br> ANDRE MATEVOUSIAN, ) <br> KENNETH HYLE, and ) <br> FEDERAL BUREAU OF PRISONS, ) <br> ) <br>     **Defendants.** ) | Case No. 21-cv-01719-JPG |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

  Matthew Alexander King, an inmate in the custody of the Federal Bureau of Prisons (FBOP) and currently incarcerated at the United States Penitentiary in Marion, Illinois (USP-Marion), brings this action pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), and Illinois state law. King filed the Complaint (Doc. 1-1) in Illinois state court, and Defendants removed it under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), and the Westfall Act, 28 U.S.C. § 2679. King challenges the screening process for outgoing mail in USP-Marion's Communications Management Unit (CMU), and he seeks monetary, declaratory, and injunctive relief. (Doc. 1-1). For the reasons set forth below, this Court will dismiss all claims set forth in the Complaint.

1

The Complaint is now before the Court for screening under 28 U.S.C. § 1915A, which requires the Court to review prisoner complaints and filter out non-meritorious claims. 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous or malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations are liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

According to the allegations in the Complaint, King has been housed in USP-Marion's CMU since August 2021. (Doc. 1-1, p. 6). Until 2015, CMU inmates were allowed to send and receive "special mail," as defined by 28 C.F.R. 540.2(c) and FBOP Program Statement 5265.15 to include mail sent to and received from a variety of government agencies, departments, and individuals.[1] In order for mail to undergo processing pursuant to the special mail procedures set forth in 28 C.F.R. 540.18-.19, the sender was required to write "Special Mail – Open only in the presence of the inmate" and identify himself or herself on the front of the envelope. (*Id.*).

In 2015, the FBOP adopted a new, narrow definition of special mail as mail sent to an attorney only. From that point forward, all other mail was treated as general correspondence. 28 C.F.R. 540.203(b). This new definition of special mail was adopted at the behest of the FBOP's Counter-Terrorism Unit (CTU) Chief, North Central Regional Office staff, and FBOP's general counsel. The updated definition gave the CTU "total and complete monitoring of all CMU

---

[1] According to the Complaint, "special mail" includes mail sent to the President and Vice President of the United States, U.S. Department of Justice (including FBOP), U.S. Attorneys' Offices, U.S. Surgeon General, U.S. Public Health Service, U.S. Secretary of the Army, Navy, or Air Force, U.S. Courts (including U.S. Probation Officers), members of U.S. Congress, Embassies, and Consulates, Governors, State Attorneys' General, Prosecuting Attorneys, Directors of State Departments of Corrections, State Parole Commissioners, State Legislators, State Courts, State probation officers, other federal and state law enforcement offices, and representatives of the news media. (*See* Doc. 1-1, p. 6).

inmates' communications." (*Id*.).

Following adoption of the new definition of "special mail" in 2015, the defendants began delaying outgoing mail that included a grievance or complaint against USP-Marion staff, CMU staff, or CTU staff.  At times, the defendants contacted the intended mail recipients and informed them that the grievances and complaints were frivolous, in order to deter any investigation into inmate complaints.  (*Id*.).  King maintains that the new definition of special mail was adopted to obstruct CMU inmates, including King, from filing lawsuits in federal court and filing grievances against FBOP staff with state and federal agencies.  King offers no examples of grievances or suits that were obstructed or delayed pursuant to this definition of "special mail."  (*Id*.).

## Claims

The Court adopts King's designation of the claims, as set forth in the *pro se* Complaint:

| | |
|---|---|
| **Count 1:** | First Amendment freedom of speech claim against all defendants, except the FBOP, for implementing an unconstitutional policy of obstructing outgoing CMU inmate mail containing complaints about staff by applying a new, narrow definition of "special mail" set forth in 28 C.F.R. 540.203(b). |
| **Count 2:** | First Amendment claim against all defendants, in their official capacities, striking down as unconstitutional the new definition of "special mail" in 28 C.F.R. 540.203(b), which defines outgoing mail as mail sent to an attorney only, and reinstating the old definition of "special mail" in 28 C.F.R. 540.2(c), which defines the term broadly. |
| **Count 3:** | Illinois civil conspiracy claim against all defendants, except the FBOP, for reaching an agreement to obstruct or delay outgoing "special mail," defined broadly in 28 C.F.R. 540.2(c) and 28 C.F.R. 540.18 - 540.19, by using a narrow definition of this term, as set forth in 28 C.F.R. 540.203(b). |
| **Count 4:** | Illinois intentional infliction of emotional distress claim against all defendants, except the FBOP, for causing King to suffer extreme emotional pain, anxiety, weight loss/gain, sleeplessness, and anger due to their interference with his special mail. |

Any other claim not addressed herein is dismissed without prejudice under *Twombly*.[2]

## **Removal**

Defendants removed the case from state court in Williamson County, Illinois, to this Court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), and, alternatively, the Federal Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. § 2679. King did not object to removal. The Court finds that it is proper.

The federal officer removal statute, 28 U.S.C. § 1442(a)(1), applies to officers of the United States who are sued in their individual or official capacity for acts under color of such office. In his first two claims, King named the defendants for misconduct that occurred while they were acting under color of such office and in violation of his rights under the First Amendment. All individual federal officers will remain named in connection with Counts 1 and 2, and removal of these claims is proper under 42 U.S.C. § 1442(a)(1).

The Federal Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. § 2679, is a federal statute commonly referred to as the "Westfall Act." For actions commenced in state court, the Westfall Act calls for removal to the federal district court "embracing the place in which the action or proceeding is pending." *See Osborn v. Haley*, 549 U.S. 225, 230 (2007) (citing 28 U.S.C. § 2679(d)(2)). Williamson County is situated in this federal judicial district.

The Westfall Act grants federal employees absolute immunity from tort claims arising out of acts undertaken in the course and scope of a federal employee's employment. *See Osborn*, 549 U.S. at 230 (citing 28 U.S.C. § 2679(b)(1)). It amended the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671-80, to require substitution of the United States as a defendant in a tort suit brought against a government employee. *Id.* at 230. The Attorney General may certify that a

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

4

federal employee sued for wrongful or negligent conduct "was acting within the scope of his office or employment at the time of the incident out of which the claim arose," and the Westfall Act renders this certification[3] "conclusiv[e] . . . for purposes of removal." *Id*. (citing 28 U.S.C. §§ 2679(b)(1), (d)(1), (2)).  Upon such certification, the United States is substituted as defendant in place of the federal employee, and the employee is dismissed. *Id*. (citing § 2679(d)(2)). The claim is then governed by the FTCA.

In Counts 3 and 4, the United States Attorney's designee certified that all the defendants were federal employees acting within the scope of their federal office or employment at the time of the events giving rise to the Complaint.  The United States will be substituted as the sole defendant, in place of the individual defendants, for the state tort claims.  The FTCA will govern Counts 3 and 4 against the United States.

## Section 1915A Review

### Count 1

King alleges that the defendants violated his First Amendment right to freedom of speech by using the new definition of "special mail" to obstruct or delay outgoing mail containing grievances or complaints about USP-Marion staff, CMU staff, or CTU staff.  He seeks money damages against the defendants, in their individual capacities, for these violations under *Bivens*.

In *Bivens*, the United States Supreme Court recognized that victims of constitutional deprivations by federal agents have a right to recover damages against the officials in federal court, even in the absence of a statute conferring this right.  *See Carlson v. Green*, 446 U.S. 14, 18 (1980) (citing *Bivens*, 403 U.S. at 397). This implied right of action for money damages has since been

---

[3] A United States Attorney may issue the certification in lieu of the Attorney General.  *See* 28 C.F.R. § 15.4(a).  In the instant case, the United States Attorney delegated this authority to the Chief of the Civil Division, who certified that all Defendants were acting within the scope of their employment at the time of the incidents out of which the claims arose.  (*See* Doc. 1, ¶¶ 7-8).

recognized in only two other contexts, including a Fifth Amendment gender discrimination case in *Davis v. Passman*, 442 U.S. 228 (1979), and an Eighth Amendment denial of medical treatment case in *Carlson v. Green*, 446 U.S. 14 (1980). In recent years, the Supreme Court has repeatedly and emphatically warned lower courts to refrain from all further expansion of this implied damages remedy absent "special factors" that justify it. *Ziglar v. Abbasi*, -- U.S. --, 137 S.Ct. 1843, 1854-55 (2017); *Egbert v. Boule*, -- U.S. --, 142 S.Ct. 1793 (2022).

Count 1 presents a new context. This claim focuses on the conduct of CMU staff, CTU staff, and regional staff charged with the task of monitoring inmate communications under special circumstances. These individuals are responsible for screening and clearing mail for inmates whose communications require vigilant monitoring for heightened security reasons. Judicial interference with the decisions of these individuals risks the security of inmates, staff, and the public. This context is unlike any previously recognized in *Bivens*, *Davis*, or *Carlson*.

Special factors counsel hesitation in expanding this implied damages remedy into the First Amendment context. This Court is ill-suited to weigh in on the daily operations of the mailroom servicing the CMU / CTU. And, King has other recourse in the form of the administrative remedies process at the prison. If he disagrees with decisions regarding his outgoing mail or delays associated with the same, he can use the prison's internal grievance process to challenge the decisions. However, this Court will not risk disruptive intrusion into FBOP functioning under the circumstances presented. *Abbasi*, 137 S.Ct. at 1859-60.

In *Sharp v. Numsen*, a district court recently declined to expand the implied damages remedy into the prison mail context under the First Amendment, after considering factors that include court interference with sensitive government functions, separation of powers, congressional authority to create prison damage remedies, systemwide costs and effects of

extending *Bivens* in the prison mail context, and the chilling effect of *Bivens* remedies on prison duties. 2022 WL 834421 (W.D. Wis. Mar. 21, 2022). The same concerns weigh against expansion of *Bivens* here. The Court finds that *Bivens* does not extend to First Amendment claims involving access to mail in the CMU or related claims for denial of court access.

The United States Supreme Court and other courts agree that an implied damages remedy is unavailable for First Amendment claims, including those involving interference with prison mail and court access. *See, e.g., Egbert v. Boule*, 142 S.Ct. 1793 (2022) (*Bivens* remedy unavailable for claim of retaliation for exercising a First Amendment right because expansion of damages remedy into this context would unduly inhibit officials in discharging their official duties for fear of personal monetary liability); *Sharp v. Numsen*, 2022 WL 834421 (W.D. Wis. Mar. 21, 2022) (declining to extend *Bivens* to a First Amendment claim concerning alleged screening of inmate's mail); *Kluball v. Bell*, 2022 WL 782734, at *1-2 (C.D. Ill. Mar. 14, 2022) (dismissing at Section 1915A review a First Amendment court access claim as not a valid theory under *Bivens*); *Piggee v. McMillin*, 2022 WL 409682, at *1, 3 (C.D. Ill. Feb. 9, 2022) (declining to extend *Bivens* to a First Amendment claim alleging retaliation, and collecting cases indicating that *Bivens* should not be extended to First Amendment claims at Section 1915A screening); *Sargeant v. Barfield*, 2021 WL 2473805, at *1, 3 (N.D. Ill. 2021) (dismissing First Amendment claim alleging retaliation on grounds that precedent does not support extension of *Bivens* to such a claim); *White v. True*, 2019 WL 3074528 (S.D. Ill. 2019) (concluding that the First Amendment should not be extended under *Bivens* to claims concerning a federal inmate's access to mail).

Beyond this, King cites no particular incident of mail interference, interference with court access, or loss of a legal claim resulting from this interference in the Complaint. This claim arises from his general allegations of interference with outgoing mail sent by all USP-Marion CMU

inmates over the past seven years. King has only been housed there since late 2021. Even if the implied damages remedy encompasses this claim, the allegations articulate no claim for relief under the First Amendment. Accordingly, Count 1 will be dismissed without prejudice.

### Count 2

King seeks an order enjoining the defendants, in their official capacities, from using the new definition of "special mail" and requiring them to apply the old definition and screening policy for outgoing mail. He brings this claim against the government officials, in their official capacities, pursuant to *Bivens*. However, a *Bivens* claim cannot proceed against federal agents in their official capacities; these claims are brought against relevant officials in their individual capacities for money damages. *Bunn v. Conley*, 309 F.3d 1002, 1009 (7th Cir. 2002). King cannot proceed with his claims for injunctive relief under *Bivens* as pled.

He may pursue a request for injunctive relief using a different legal route. For example, the Administrative Procedures Act allows claims for injunctive relief against the United States in certain contexts. *See* 5 U.S.C. § 702; *Thomas v. Watts*, 2013 WL 3043686, at *1, * 5 (S.D. Ind. 2013). Under the Court's general equitable powers, a plaintiff can also bring a claim for injunctive relief against a federal official in his or her official capacity, if that officer is responsible for implementing the injunctive relief sought. *See, e.g., Lutz v. United States*, 2017 WL 2588073, *1-2 (C.D. Ill. 2017) (allowing a claim against a warden in official capacity because he would be the party responsible for carrying out injunctive relief). Because an official capacity *Bivens* claim is not the appropriate avenue to injunctive relief in Count 2, the claim will be dismissed.

### Counts 3 and 4

The Federal Tort Claims Act (FTCA) governs the remaining claims against the United States. The FTCA allows civil actions for money damages against the United States for personal

injury or death caused by the negligent or wrongful act or omission of any Government employee while acting within the scope of his or her office or employment.  *See* 28 U.S.C. § 1346(b)(1).  When considering an FTCA claim, the Court looks to the law of the state where the misconduct occurred.  *Augutis v. United States*, 732 F.3d 749, 752 (7th Cir. 2013) (court considering an FTCA claim looks to the state tort law of the state where the tortious conduct occurred).  King's FTCA claims are all governed by Illinois state law.

With that said, these claims do not satisfy the *Twombly* pleading standard.  King asserts claims for conspiracy and intentional infliction of emotional distress based on general and vague allegations of mail interference involving CMU inmates pre- and post-dating his incarceration at USP-Marion.  To the extent the factual allegations pertain to him, King offers no details describing a single act of interference with his outgoing mail on a particular date.  He does not describe a single complaint that was delayed or legal claim that was lost in state or federal court as a consequence.  King describes no grievance that he wrote and was unable to send out of the prison due to the interference of USP-Marion staff, CMU staff, or CTU staff.   And, the interference with another inmate's mail, grievance, or legal claim does not support King's own claims in this case.  Accordingly, Counts 3 and 4 will be dismissed without prejudice for failure to state any claim upon which relief may be granted.

## Disposition

**IT IS ORDERED** that although the Complaint (Doc. 1-1) was properly removed to this Court, it does not survive preliminary review under 28 U.S.C. § 1915A and is **DISMISSED** without prejudice for failure to state a claim for relief against the defendants.

**IT IS ORDERED** that **COUNTS 1** and **2** are **DISMISSED** without prejudice against **ALL DEFENDANTS**.

**IT IS ORDERED** that the **UNITED STATES** is **SUBSTITUTED** in place of the **INDIVIDUAL DEFENDANTS** in **COUNTS 3** and **4**, and the **INDIVIDUAL DEFENDANTS** are **DISMISSED** with prejudice in connection with these claims.  In addition, **COUNTS 3** and **4** are **DISMISSED** without prejudice against the **UNITED STATES** because the allegations articulate no claim against this defendant under the Federal Tort Claims Act.

The Clerk's Office is **DIRECTED** to **ADD** the **UNITED STATES** as a defendant in CM/ECF and **TERMINATE ALL DEFENDANTS** in CM/ECF.

On or before **September 9, 2022**, King is **GRANTED** leave to file a "First Amended Complaint."  Should he fail to file an amended complaint within the allotted time or consistent with the instructions in this Order, the entire case shall be dismissed with prejudice for failure to comply with a court order and/or prosecute his claims.  FED. R. CIV. P. 41(b); *Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2).

It is strongly recommended that King use the civil rights complaint form designed for use in this District.  He should label the form, "First Amended Complaint," and he should use the case number for this action (No. 21-cv-01719-JPG).  To enable Plaintiff to comply with this Order, the **CLERK** is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

An amended complaint generally supersedes and replaces prior versions, rendering the original complaint void.  *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004).  The amended complaint must stand on its own without reference to any previous pleading.  Plaintiff must re-file any exhibits he wishes the Court to consider.  The amended complaint is also subject to review pursuant to 28 U.S.C. § 1915A.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of

Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 8/12/2022**

<u>s/J. Phil Gilbert</u>
**J. PHIL GILBERT**
**United States District Judge**